UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AE HOTEL VENTURE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 05 C 2109 |
| | ) |
| GMAC COMMERCIAL MORTGAGE | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the appeal of Appellant-Debtor AE Hotel Venture ("AE Hotel"). AE Hotel requests that we reverse the decision of the United States Bankruptcy Court for the Northern District of Illinois, which held, *inter alia*, that AE Hotel was responsible for paying a prepayment premium to Appellee-Claimant GMAC Commercial Mortgage Corporation ("GMAC"). For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## BACKGROUND

AE Hotel was the owner and operator of a Hawthorne Suites Hotel in Lincolnshire, Illinois. On May 1, 1997, AE Hotel and LaSalle National Bank (now

known as LaSalle Bank National Association referred to herein as "LaSalle"), as the trustee under a certain trust agreement,[1] borrowed $7,600,000 from Aries Capital Corporation ("Aries") to acquire the underlying hotel property. The loan was evidenced by a mortgage note in the amount of $7,600,000.00. As security for the loan obligations, Aries was granted a first priority mortgage lien and security interest in the hotel and all of its associated personal property, including the rents and profits. The lien was evidenced by, among other documents, a mortgage and security agreement and assignment of leases and rents, dated May 1, 1997 (referred to collectively as "the mortgage"). Aries subsequently sold all of its interest in the loan and the collateral for the loan to LaSalle, as trustee for a securitization trust. LaSalle retained GMAC as its special servicer to administer defaulted loans.

Beginning in December 2003, AE Hotel defaulted on the mortgage loan by failing to make its monthly payments. On April 28, 2004, GMAC accelerated all amounts due under the note and ultimately instituted foreclosure proceedings. Thereafter, AE Hotel filed a voluntary petition for protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. GMAC filed a claim with the

---

[1] AE Hotel is the sole owner of the beneficial interest in the referenced trust agreement.

bankruptcy court which included principal, interest, default interest, fees and expenses, and a prepayment premium of $1,248,290.91.

Soon after the filing of the bankruptcy case, AE Hotel sought GMAC's consent to use the cash generated by the hotel during the pendency of the bankruptcy case.[2] In return for that consent, AE Hotel promised to sell the hotel on a particular timetable and promised that GMAC, as the mortgagee, could participate in any sale that might transpire.

On August 30, 2004, AE Hotel conducted an auction sale of the hotel. The $7,800,000 bid of GSH Lodging was accepted. The sale generated approximately $800,000 more than was needed to pay the principal and interest remaining on the loan. On August 31, the bankruptcy court entered an order approving the sale. On September 14, GMAC filed a motion for the allowance of its claim and to compel payment. In its motion, GMAC requested that the court allow and compel the payment of all the elements of its claim. AE Hotel opposed GMAC's motion and specifically objected to GMAC's request for default interest and for the prepayment premium. After oral argument, the bankruptcy court granted GMAC's motion in part, allowing the prepayment premium as a valid charge under Section 506(b) of the Bankruptcy

---

[2] Pursuant to Section 363(c)(2) of the Bankruptcy Code, AE Hotel would not be able to use this cash collateral without GMAC's consent unless the Bankruptcy Court ordered otherwise.

Code, but denied GMAC's request for default interest. AE Hotel now appeals the bankruptcy court's award of the prepayment premium.

## LEGAL STANDARD

We have jurisdiction over bankruptcy appeals pursuant to 28 U.S.C. § 158(a). Accordingly, we may affirm, modify, or reverse the bankruptcy judge's judgment, order, or decree or may remand it with instructions for further proceedings in accord with the following standards. Fed. R. Bankr. Proc. 8013.

When reviewing the opinion of the bankruptcy court on appeal, the bankruptcy court's findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Id.; see In re Krueger, 192 F.3d 733, 737 (7th Cir.1999). A finding is clearly erroneous when the reviewing court, having considered the entire body of evidence, is left with the definite and firm conviction that a mistake has been committed. Shaw v. Prentice Hall Comp. Pub., Inc., 151 F.3d 640, 642 (7th Cir.1998). Where questions of law are concerned, the district court will review the bankruptcy court's ruling *de novo*. In re Krueger, 192 F.3d at 737.

## DISCUSSION

The bankruptcy court held that the prepayment premium was: 1) due and payable under the terms of the mortgage loan documents and 2) enforceable as a matter

of Illinois law. AE Hotel now asserts on appeal that the bankruptcy court erred in both respects.

For GMAC to receive a prepayment premium as a reasonable post-petition charge under section 506(b), the premium must pass a two-part test. See Noonan v. Fremont Fin. (In re Lappin Elec. Co.), 245 B.R. 326, 329 (Bankr. E.D. Wis. 2000); In re 433 S. Beverly Dr., 117 B.R. 563, 568-69 (Bankr. C.D. Cal. 1990). First, the prepayment premium must be enforceable under state law. Lappin, 245 B.R. at 329; Ferrari v. Barclays Am./Bus. Credit, Inc. (In re Morse Tool, Inc.), 87 B.R. 745, 748-50 (Bankr. D. Mass. 1988). Second, the prepayment premium must satisfy section 506(b): the charge must be one "provided for under the agreement" and it must be "reasonable." 11 U.S.C. § 506(b). Whether a charge is "reasonable is, of course, a question of federal law." In re Schwegmann Giant Supermarkets P'ship, 264 B.R. 823, 827 (Bankr. E.D. La. 2001), aff'd, 287 B.R. 649 (E.D. La. 2002); In re Outdoor Sports Headquarters, Inc., 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993); 433 S. Beverly, 117 B.R. at 569.

## I. Express Terms of the Loan Agreement

AE Hotel argues that the terms of the loan agreement did not call for payment of the prepayment premium at the time of the auction sale. Section 24 of the Mortgage Note states:

> "If following the occurrence of any Event of Default, Mortgagor shall tender payment of an amount sufficient to satisfy the Debt at any time prior to a sale of the Mortgaged Property either through foreclosure or the exercise of other remedies available to Mortgagee under this Mortgage, such tender by Mortgagor shall be deemed to be a voluntary prepayment under the Note and this Mortgage in the amount tendered. If at the time of such tender prepayment of the principal balance of the Note is not permitted, Mortgagor shall, in addition to the entire Debt, also pay the Mortgagee the applicable prepayment consideration specified in the Note."[3]

The bankruptcy court interpreted Section 24 to indicate that after the occurrence of an Event of Default, the prepayment premium would not be due if the sale were conducted by GMAC through its remedies under the mortgage note, which included foreclosure, and the prepayment premium would be due if the mortgaged premises were sold under any other circumstances. AE Hotel submits that the property was sold, and the debt satisfied, in August 2004, after the auctioned sale and, therefore, could not have constituted a voluntary payment under the terms of the agreement. AE Hotel further asserts that the terms of the agreement only allow for a prepayment premium when a payment satisfying the debt is voluntary. Therefore, under the terms of the agreement, argues AE Hotel, a prepayment premium was uncalled for in this case.

As the bankruptcy court properly noted, the controlling provisions of the loan documents require not only that the prepayment occur prior to the sale of the property,

---

[3] Paragraph 5 of the Mortgage Note is virtually identical.

but also that said payment comes about through the remedies available to GMAC, one of which being foreclosure, to escape the prepayment penalty. In the case at bar, the foreclosure proceeding initiated by GMAC was halted by AE Hotel's bankruptcy filing and never concluded or reinitiated and, therefore, did not result from the foreclosure. The property was subsequently sold at auction and the debt was paid as a result. Consequently, because the foreclosure was stopped prior to the auctioned sale, the sale was voluntary and therefore subject to a prepayment premium under the terms of the loan agreement.

## II.     Collection of the Prepayment Premium After Acceleration

Next, AE Hotel claims that even if the terms of the loan documents grant GMAC a legal right to collect a prepayment premium, GMAC waived its right to do so when it accelerated the loan by filing the foreclosure action. Generally, a mortgagee loses its right to a premium when it elects to accelerate the debt. Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n, 98 Ill. App. 3d 646, 424 N.E.2d 939, 940-941 (1981). This is so because acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity. However, if terms of an agreement provide circumstances where a prepayment premium is in fact payable then the agreement will be enforced. In re Schaumburg Hotel Owner Ltd. P'ship, 97 B.R. 943, 953 (Bkrtcy. N.D. Ill. 1989).

The bankruptcy court found that, despite the fact that the loan agreement did not explicitly mention acceleration as it related to a prepayment penalty, the controlling provision made it evident that a penalty was called for in such an event. AE Hotel maintains that, because the loan documents do not explicitly call for a prepayment premium after acceleration, no prepayment premium was warranted under the agreement. As the bankruptcy court noted, AE Hotel's analysis of the controlling provisions stops short.

Section 24 says, that "any payment" will be a voluntary payment under the note so long as it is not resulting from foreclosure. Further, Paragraph 5 indicates that "any voluntary payment" will result in a prepayment premium if it occurs prior to foreclosure. The loan agreement is explicit that any payment not resulting from GMAC remedies under the mortgage note are voluntary and therefore subject to the prepayment penalty. The loan agreement is silent on whether an accelerated payment will vitiate a prepayment premium. Although the loan agreement is not explicit on the matter, to give meaning to this provision we will not exclude voluntary prepayments resulting from acceleration. If it was the intention of the parties to exclude accelerated payments, the parties should have provided for such under the agreement. For us to carve out an exception now would go against the agreement's framework.

Consequently, the bankruptcy court was correct in finding that the loan agreement provided for prepayment penalties even in the event of acceleration.

### III. Prepayment Premium as Penalty

Finally, AE Hotel takes issue with the bankruptcy court's finding that the prepayment premium did not constitute a penalty. First, AE Hotel asserts that the bankruptcy court wrongfully placed the burden of proof on it to prove that the prepayment premium was unreasonable. Second, AE Hotel argues that the formula used to calculate the prepayment premium resulted in a large award constituting an illegal penalty under state law.

AE Hotel's first contention, that the bankruptcy court wrongfully placed the burden of proof on it to prove the prepayment premium was unreasonable, can be disposed of quickly. It is well settled that "the burden of proving that a clause imposes a penalty rests with the party resisting its enforcement. XCO Intern. Inc. v. Pacific Scientific Co., 369 F.3d 998, 1003 (7th Cir. 2004); Pace Comm'n, Inc. v. Moonlight Design, Inc., 31 F.3d 587, 594 (7th Cir. 1994); First Nat'l Bank v. Atlantic Tele-Network Co., supra, 946 F.2d at 521-22; Pav-Saver Corp. v. Vasso Corp., supra, 97 Ill. Dec. 760, 493 N.E.2d at 427. Therefore, it is evident that AE Hotel's argument is misplaced and attempts to reverse the burden of proof.

AE Hotel also argues that the prepayment premium afforded under the loan is an unreasonable forecast of damages because it uses United States Treasury securities interest rates when discounting the future stream of interest payments under the Note to present value. GMAC maintains that AE Hotel failed to present this argument to the bankruptcy court and consequently waived the ability to do so on appeal.

As a general rule, arguments not presented to the bankruptcy court are waived on appeal. See In re Bero, 110 F.3d 462, 466 (7th Cir. 1997). AE Hotel first asserts that it did present this argument, albeit in a broader sense, to the bankruptcy court by showing its displeasure with a prepayment premium that is "quite large." We find the argument AE Hotel made to the bankruptcy court to be woefully undeveloped and lacked the specificity to present the current argument now on appeal. Although an excessive fee could result from an unreasonable formula, it could also come about from a host of other reasons. Consequently, some specificity is required to raise such an argument on appeal. AE Hotel failed to present evidence supporting the unreasonableness of the prepayment premium, let alone the formula they now take issue with, to the bankruptcy court.

AE Hotel also alleges that the bankruptcy court, on two occasions, erred in not extending discovery on issues that would have provided information relevant to the reasonableness of the prepayment premium and, therefore, the case should be

remanded. Upon a review of the record, it becomes evident that the parties were presented ample time to investigate a litany of issues presented in the case and that the bankruptcy court was justified in limiting discovery. Further, AE Hotel's argument is flawed because it admits that it failed to present the argument to the bankruptcy court in the first place because of its own misguided notion that the party defending the prepayment premium had the burden of proving its legality. Consequently, we will not reverse or remand an issue not presented to the bankruptcy court where there was enough time to conduct discovery or fix a mistaken assumption of the parties relied upon at trial.

## **CONCLUSION**

For the reasons set forth above, we affirm the decision by the Bankruptcy Court that the prepayment premium was in fact due and payable under the terms of the mortgage loan documents as well as enforceable as a matter of Illinois state law.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:  January 20, 2006